**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-235-ABJ** |
| | : | |
| **GUSTAV SEESTEDT** | : | |
| | : | |
| **Defendant.** | : | |

**RESPONSE IN OPPOSITION TO THE VICTIM'S MOTION REQUESTING THAT THE COURT REJECT THE PLEA AGREEMENT**

Defendant Gustav Seestedt ("Mr. Seestedt"), by and through his counsel, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Response to the Motion filed by counsel for the victim requesting that the Court reject the Plea Agreement negotiated by the parties (ECF No. 51).

## I. Background

On May 15, 2024, the Government filed an Indictment charging Mr. Seestedt with one count of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). (ECF No. 1.) On May 16, 2024, Mr. Seestedt was arrested at his home in Washington, D.C. (ECF No. 3.) That same day, Mr. Seestedt made his initial appearance in this Court and was ordered detained pending a detention hearing. The Government issued a press release regarding this case. On May 20, 2024, Mr. Seestedt appeared for a detention hearing, which was ultimately continued

to May 22, 2024. On May 22, 2024, Mr. Seestedt was ordered detained pending trial. (ECF No. 17.) The parties engaged in the process of discovery, and the Government continued its investigation. At some point before July 27, 2024, Minor Victim 1 ("MV1"), having learned of the arrest in this case, contacted the Government regarding Mr. Seestedt. MV1, already an adult for many years, informed the Government that she had previously been in a relationship with Mr. Seestedt beginning in 2005 when she was 14 years old and Mr. Seestedt was 19 years old. MV1 further informed the Government that the relationship, of which both her family members and Mr. Seestedt's family members were aware at the time, continued until she was 18 or 19 years of age. On July 27, 2024, the Government conducted a formal interview of MV1. Other interviews followed.

On October 23, 2024, the Government filed a Superseding Indictment charging Mr. Seestedt with the following offenses: sexual exploitation of a child (MV1; offense dates between June 1, 2005 and May 31, 2009), in violation of 18 U.S.C. § 2251(a) (Count One); first-degree child sexual abuse (MV1; offense dates between June 1, 2005 and July 31, 2005), in violation of 22 D.C. Code § 3008 (Counts Two and Three); distribution of child pornography (offense date May 8, 2024), in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1) (Count Four); and possession of child pornography (offense date May 16, 2024), in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Five). (ECF No. 23.) On July 24, 2025, the

Government presented to counsel a proposed plea agreement contemplating a guilty plea to Counts One and Five of the Superseding Indictment with an agreement under Rule 11(c)(1)(C) to a sentence of 15 years of imprisonment followed by a lifetime of supervised release. On August 19, 2025, counsel provided signed plea paperwork to the Government. On August 20, 2025, the Government provided the signed plea paperwork to the Court. That same day, counsel for MV1 entered their appearances in this case. A change of plea hearing was ultimately scheduled for September 2, 2025.

On September 2, 2025, Mr. Seestedt appeared before the Court and accepted responsibility for his conduct. Specifically, Mr. Seestedt pled guilty pursuant to a written Plea Agreement to Counts One and Five of the Superseding Indictment. (ECF Nos. 45, 46, 47.) Under the Plea Agreement, the parties agreed pursuant to Rule 11(c)(1)(C) that the appropriate sentence in this case is a sentence of 15 years of imprisonment (the mandatory minimum on Count One) to be followed by lifetime supervised release. (ECF No. 46 at 2-3.) The Court accepted Mr. Seestedt's guilty plea and deferred acceptance of the Rule 11(c)(1)(C) agreement.

On April 22, 2026, counsel for MV1 filed a Motion requesting that the Court reject the Rule 11(c)(1)(C) Plea Agreement. (ECF No. 22.) The Court directed the parties to respond to the Motion. On May 8, 2026, the Government filed a combined response to the Motion and sentencing memorandum. (ECF No. 54.) In its response

and memorandum, the Government argued that the Court should accept the Plea Agreement and impose the agreed upon sentence of 15 years of imprisonment followed by a lifetime of supervised release.[1] Sentencing is scheduled for June 30, 2026. Mr. Seestedt now responds to the Motion filed by counsel for MV1.

## II. Counsel for MV1 Do Not Represent a Party to the Sentencing Proceedings and Have Set Forth No Authority to Establish that They Have a Right to Present Policy- and Guidelines-Based Sentencing Arguments

It is well established that "crime victims are not parties to a criminal sentencing proceeding." *United States v. Aguirre-Gonzalez*, 597 F.3d 46, 53 (1st Cir. 2010). Counsel for MV1 ignore this rule of law. While 18 U.S.C. § 3771(a)(4) affords a crime victim "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding," counsel for MV1 have come forward with no authority for the proposition that they are entitled to act as *quasi*-prosecutors and advance policy- and guidelines-based arguments concerning Mr. Seestedt's sentencing proceeding. As a matter of law, the provisions of the Crime Victims' Rights Act "do not vest a victim with a substantive interest in the outcome of a sentencing proceeding." *United States v. Alcatel-Lucent France, SA*, 688 F.3d 1301, 1306 (11th Cir. 2012).

---

[1] Mr. Seestedt joins in the Government's arguments in favor of accepting the Plea Agreement.

Additionally, "[t]he requirements of due process are not suspended with the pronouncement of guilt, but continue to operate in the sentencing process." *United States v. Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983). There is *one* prosecuting authority in this matter: the United States. Mr. Seestedt's due process rights should not give way merely because counsel for MV1 are not satisfied with the Government's advocacy. To the extent counsel for MV1 express MV1's individual views on the conduct *of which she is a victim*, the impact of that conduct *on her*, and appropriateness of the agreed upon sentence *in light of her experience* as a victim, Mr. Seestedt does not object. However, Mr. Seestedt does object to counsel for MV1 providing broad-based policy and guidelines arguments, especially where some of the commentary relates to conduct that did not even involve their client. Simply put, it is not reasonable for counsel for a non-party to assume the role of a would-be prosecutor in a criminal case. And a district court does not err by refusing to consider guidelines-based arguments advanced by a victim. Other courts have recognized this basic principle. For example, in *In re Brock*, 262 F. App'x 510 (4th Cir. 2008), the Fourth Circuit denied a mandamus petition filed by a crime victim in which the victim argued that the district court erred by denying him access to portions of the defendants' PSRs, refusing to consider his arguments regarding the sentencing guidelines, and incorrectly calculating the defendants' sentencing guidelines ranges. Notably, the Fourth Circuit upheld the district court's decision not to consider the

victim's guidelines-based arguments where the district court considered the victim's impact statement, afforded him the opportunity to offer further statements about the crime at issue, and emphasized that the guidelines represented only one of many factors to be considered. *Id*. at 512-13.

To safeguard Mr. Seestedt's rights to due process and fundamental fairness, this Court should reject the policy- and guidelines-based arguments advanced by counsel for MV1.

## III. On their Merits, the Arguments of Counsel for MV1 Fail

Counsel for MV1 have advanced a number of arguments in an effort to convince this Court to reject the Rule 11(c)(1)(C) Plea Agreement, an agreement that would result in Mr. Seestedt's imprisonment for 15 years followed by a lifetime of court supervision. If considered, each argument fails. First, counsel for MV1 argue that the Court should exercise its authority under Rule 11 to reject the parties' Rule 11(c)(1)(C) agreement as unduly lenient. Of course, counsel for MV1 do not cite a single D.C. Circuit case in support of this proposition. The string cite provided by counsel for MV1 consists of cases that are wholly inapposite. In *United States v. Smith*, 417 F.3d 483 (5th Cir. 2005), the Fifth Circuit affirmed the rejection of a plea agreement where: (1) out of the two counts in the indictment, the defendant pled guilty to the offense with the lower statutory maximum penalty of five years; (2) the defendant had 20 years' worth of convictions and probation revocations arising out

of theft, forgery, and fraud; (3) the defendant scored a staggering 29 criminal history points; and (4) the defendant had pending charges for other alleged fraudulent activity against other victims. Mr. Seestedt has *no criminal history*. He pled guilty to the top count in the Superseding Indictment, an offense that carries a mandatory minimum of 15 years of imprisonment. He also pled guilty to an additional count.

In *United States v. Dickerson*, 636 F. App'x 506 (11th Cir. 2016), the Eleventh Circuit affirmed the rejection of an 11(c)(1)(C) plea agreement where: (1) the defendant pled guilty to being a felon in possession of a firearm; (2) the advisory guidelines (OL 23; CHC V) recommended a sentence of 84-105 months; (3) the plea agreement called for a sentence not to exceed 64 months; (4) the defendant, at just 23 years of age, had a serious criminal history, including convictions for robbery, providing a false name to law enforcement, attempting to elude, and theft; (5) while detained prior to sentencing, the defendant sustained 15 disciplinary sanctions; and (6) the offense conduct involved possession of, among items, an assault rifle. Ultimately, the district court imposed a low-end sentence of 84 months. Again, Mr. Seestedt has no criminal history. He has not misbehaved at the jail. The proposed plea agreement contemplates 15 years (not 5 years) in prison and a lifetime of supervision.

In *United States v. Harris*, 679 F.3d 1179 (9th Cir. 2012), the Ninth Circuit affirmed the rejection of a plea agreement that contemplated a 60-month sentence

where: (1) the defendant, who at the time of the instant offense was serving 108-month federal sentence for assault causing serious bodily injury, joined in an assault on a corrections officer; and (2) the defendant qualified as a career offender. To state the obvious, Mr. Seestedt has no criminal history. A sentence of 15 years of imprisonment (three times the sentence at issue in the rejected agreement in *Harris*) and a lifetime of supervision is sufficient to promote the protection of the community.

*United States v. Greener*, 979 F.2d 517 (7th Cir. 1992), a pre-*Booker* case, involved a defendant with no criminal history. That is where the similarities with Mr. Seestedt's case, as to which the guidelines are by contrast merely advisory, end. In *Greener*, the defendant was charged in four counts with various firearms offenses. There, the defendant traded three firearms to a confidential informant in exchange for a machinegun. The defendant also sold an undercover agent a pistol and offered to sell the agent seven more firearms and two homemade hand grenades. Days later, the defendant sold the agent a firearm and two hand grenades. While searching the defendant's home, law enforcement found firearms and evidence of the sale of other firearms. The district court rejected two plea agreements, both of which contemplated a guilty plea to one count and dismissal of the other counts. The district court rejected the first plea agreement because, in its view, it involved a plea to the least serious offense. The district court rejected the second plea agreement because

the count of conviction would not support a guidelines (which were then mandatory) enhancement for the number of firearms involved. The district court accepted a third plea agreement, which involved a plea to the second count in the indictment for a guidelines range of 41-51 months of imprisonment, and imposed a sentence of 41 months. Here, Mr. Seestedt pled guilty to *two* offenses, one of which is the lead count of the Superseding Indictment and requires a minimum sentence of 15 years of imprisonment. Mr. Seestedt also agreed to a lifetime term of court supervision. There can be no serious argument that the counts of conviction do not accurately account for Mr. Seestedt's conduct.

The citation to a footnote in *United States v. McGovern*, 822 F.2d 739 (8th Cir. 1987), is also inapposite. In that case, as relevant here, the district court rejected a plea agreement that called for a one-year sentence where the defendant, an attorney, participated in conduct involving securities fraud. The Eighth Circuit's opinion primarily addresses whether the district court erred in denying the defendant's motion to dismiss a subsequent indictment filed after the rejection of the plea agreement. While the appellate opinion notes that the district court described the one-year sentence as inadequate, the opinion does not detail the reasons for that conclusion. The case is therefore of little persuasive value. Nonetheless, a one-year sentence is qualitatively different from a 15-year sentence with lifetime court

supervision. In sum, counsel for MV1's string cite reveals no legitimate basis on which to reject the parties' Plea Agreement.

Next, counsel for MV1 advance strained theories of congressional intent to argue that the Court should reject the Plea Agreement. This argument is easily addressed. The sentence called for under the Plea Agreement falls within the congressionally authorized statutory range of punishment. The parties have not asked the Court to impose an illegal sentence. To the extent counsel for MV1 believe that the statutory penalties for the offenses at issue are insufficient, they may lobby before Congress for changes to the law. Mr. Seestedt's sentencing is not an appropriate vehicle for such advocacy, especially by counsel for a non-party.

With respect to counsel for MV1's assertion that the child pornography sentencing guidelines reflect some well-reasoned legislative intent that should be scrupulously effectuated in every case to which they apply, courts have considered and rejected this line of argument. *See, e.g.*, *United States v. Henderson*, 649 F.3d 955, 960 (9th Cir. 2011) (chronicling the development of § 2G2.2 and concluding that "the history of the child pornography Guidelines reveals that, like the crack-cocaine Guidelines at issue in *Kimbrough*, the child pornography Guidelines were not developed in a manner exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role") (internal quotation omitted) (alterations in original); *United States v. Grober*, 624 F.3d 592, 601 (3d Cir. 2010) (affirming

substantial downward variance from an advisory guidelines range of 235-293 months of imprisonment to a sentence at the mandatory minimum term of 60 months and, upon a thorough review of the history and development of § 2G2.2, concluding that "the Commission did not do what 'an exercise of its characteristic institutional role' required — develop § 2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress"); *United States v. Dorvee*, 616 F.3d 174, 184–88 (2d Cir. 2010) (finding within-guidelines 240-month sentence for distribution of child pornography substantively unreasonable, noting that § 2G2.2 is "fundamentally different" from other guidelines, and highlighting the "irrationality in § 2G2.2," the application of which can generate results that are "fundamentally incompatible with § 3553(a)"); *United States v. Price*, No. 09-CR-30107, 2012 U.S. Dist. LEXIS 38397, at *33 (C.D. Ill. Mar. 21, 2012) (noting that "this Court finds that § 2G2.1 presents some of the same problems presented by § 2G2.2. Section 2G2.1 is similarly not the product of empirical study by the Sentencing Commission.").

Counsel for MV1 next chronicle each sentencing enhancement contained in the estimated offense level calculation in the Plea Agreement in arguing that the 11(c)(1)(C) agreement does not, in their view, adequately permit the Court to ratchet up Mr. Seestedt's sentence to account for each offense characteristic. This argument reflects a fundamental misunderstanding of the law of sentencing. At a federal

sentencing, "[t]he Guidelines are not the only consideration[.]" *Gall v. United States*, 552 U.S. 38, 49 (2007). Indeed, the guidelines are "advisory only[.]" *Kimbrough v. United States*, 552 U.S. 85, 91 (2007). The estimate contained in the Plea Agreement was just that – an *estimate*. As the Government notes in its sentencing memorandum, the estimated calculation was not correct. In fact, it produced a result that was too high. Moreover, counsel for MV1 effectively ask this Court to apply a presumption of reasonableness to the advisory guidelines range. The law does not permit that. *See, e.g.*, *United States v. Pickett*, 475 F.3d 1347, 1353 (D.C. Cir. 2007) ("A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence. To do so would be to take a large step in the direction of returning to the pre-*Booker* regime."); *United States v. Terrell*, 696 F.3d 1257, 1261-62 (D.C. Cir. 2012).

## IV. The Agreed Upon Sentence – 15 Years of Imprisonment and a Lifetime of Supervised Release – is Sufficient but not Greater Than Necessary

Under 18 U.S.C. § 3553(a), this Court must impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing. The agreed upon sentence meets the test. In responding to counsel for MV1's Motion, the undersigned will not provide the entirety of Mr. Seestedt's sentencing argument.[2] However, several factors are worth noting. Mr. Seestedt is 39 years old.

[2] Counsel will submit a separate sentencing memorandum.

He has now been incarcerated for more than two years. He has no prior criminal convictions of any kind. He suffers from diagnosed mental health conditions. He has a history of substance abuse. He has experienced a significant loss in his life (i.e., his father). He is married and has a young child. As this Court has seen at various proceedings and will see from various character letters and at sentencing, Mr. Seestedt has many family members (including his wife) who support him and who will continue to support him as he serves his sentence and upon his release.[3] He participates in college-level educational programming at the jail.

A sentence of 15 years of imprisonment is a very lengthy sentence. Such a sentence, even accounting for good time credit, would result in Mr. Seestedt being released when he is approximately 50 years old. A recent study from the United States Sentencing Commission found that the recidivism rate of offenders over 50 years of age was less than half that of offenders under the age of 50. *See* United States Sentencing Commission, *Older Offenders in the Federal System*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Older-Offenders.pdf., at 5; *see also United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (noting that "[t]here is a statistically significant drop in recidivism for offenders aged 45 to 54 compared with 35 to 44 year olds, and rates for those aged 55 and older are even lower.") (internal citations

[3] Mr. Seestedt's family members regularly visit him at the jail.

omitted); *United States v. Payo*, 135 F.4th 99, 116 n.2 (3d Cir. 2025) (citing research on age and recidivism published by the United States Sentencing Commission).

At sentencing, Mr. Seestedt will request that he be designated to a facility with sex offender treatment, mental health treatment, and substance abuse treatment programs. Undoubtedly, the lifetime term of supervised release will include computer monitoring and a requirement to participate in sex offense treatment. Mr. Seestedt will also be required to register as a sex offender. In other words, the requested sentence of a *decade-and-a-half of incarceration in federal prison and a lifetime of court supervision* is sufficient to promote both the safety of the public and Mr. Seestedt's rehabilitation. Mr. Seestedt recognizes that his conduct was unacceptable. He has fully accepted responsibility. He knows full well that he has himself to blame. A sentence of more than 15 years in prison is not required to deter him. Moreover, a 15-year sentence sends a message to the community that engaging in conduct involving production of child pornography, even when the conduct at issue occurs remote in time and under circumstances that are far removed from the typical case, will nonetheless result in a substantial loss of liberty.

This case is not the typical production case. Here, Mr. Seestedt's production conduct dates back many years. Mr. Seestedt and MV1 were in a relationship beginning when he was 19 years old and she was 14 years old. The relationship, of which both families were aware, continued until MV1 was 18 or 19 years of age.

While of course not a defense to the crime of production, it is also notable that some of the images at issue were created when MV1 would have been 16 years old, which is the age of consent in the District of Columbia. This is not a case of production involving a prepubescent minor. This is not a case of a parent or teacher sexually abusing a child under their supervision. This is not a case in which an adult pretends to be a minor online to solicit sexually explicit images from a child. The agreed upon sentence reflects these factors.[4]

Lastly, the agreed upon sentence is appropriate in light of the sentences imposed in other cases in this District.

---

[4] To be sure, this case also involves more recent conduct of possession, distribution, and chats with an undercover. However, recent cases from this District involving similar conduct show that sentences well below the advisory guidelines range are commonly imposed. *See, e.g.*, *United States v. White*, No. 24-cr-340-DLF (D.D.C.) (sentence of 87 months of imprisonment and lifetime supervised release where defendant pled guilty to distribution of child pornography, the low-end of the guidelines range was 151 months, and the defendant traveled to the District of Columbia to engage in sex with someone he thought was a child and brought underwear for the purported child); *United States v. Fussell*, No. 24-cr-345-RC (D.D.C.) (sentence of 87 months of imprisonment and 10 years of supervised release where defendant pled guilty to two counts of distribution of child pornography, the guidelines range was 151-188 months of imprisonment, the defendant distributed CSAM to an undercover, and the defendant had thousands of videos and images of CSAM); *United States v. Welsh*, No. 23-cr-382-DLF (D.D.C.) (sentence of 87 months of imprisonment and lifetime supervised release where defendant pled guilty to two counts of distribution of child pornography (offenses occurred nearly 3 years apart), the advisory guidelines recommended a sentence of 151-188 months, and defendant engaged in chats with an undercover regarding sexual activity with the undercover's purported child.

In *United States v. McLain*, No. 19-cr-275-TNM (D.D.C.), the defendant pled guilty to an information charging him with advertising child pornography, in violation of 18 U.S.C. § 2251(d)(1)(A), an offense carrying a mandatory minimum of 15 years and a maximum of 30 years. The defendant, who had no criminal history, faced an advisory guidelines range of 262-327 months. According to the statement of offense, the defendant served as the moderator of a forum dedicated to sharing CSAM. The defendant distributed multiple files of CSAM in messages. The defendant further admitted to law enforcement that he used Instagram to obtain child pornography. Between April 2017 and January 2019, the defendant communicated with no fewer than 20 minors. He solicited and received nude images from at least 12 children. In those communications, the defendant pretended to be a young female who was sexually interested in boys. In fact, the defendant solicited images of a minor's younger brother. The defendant was sentenced to 180 months of imprisonment to be followed by 180 months of supervised release.

In *United States v. Rehman*, No. 23-cr-064-CJN (D.D.C.), the defendant was charged by way of indictment with coercion and enticement of a minor, travel with intent to engage in illicit sexual conduct, sexual exploitation of a child and attempted sexual exploitation of a child (production of child pornography), and attempted receipt of child pornography. The defendant pled guilty to one count of coercion and enticement, which carries a mandatory minimum of 10 years. The parties agreed

under Rule 11(c)(1)(C) that the appropriate sentence was a sentence between 12 and 17.5 years of imprisonment followed by no less than five years of supervised release. The defendant had no criminal history. According to the statement of offense, the defendant communicated with a 15-year-old victim over Snapchat. The victim told the defendant that she was 15 years old. The defendant told the victim that he was 30 years old, although he was actually 33 years old. On multiple occasions, the defendant requested, and the victim ultimately sent, nude photographs of her genitalia. The defendant traveled to meet the victim and engaged in sexual intercourse with her on two occasions. While state charges were pending against the defendant for conduct involving the victim, the defendant directed the victim to contact his then-attorney and falsely claim that she told him that she was 18 years old. The defendant also engaged in sexually explicit conversations with other minors, including two of the victim's classmates. The guidelines recommended a sentence of 360 months to life imprisonment. The Government requested a sentence of 17.5 years of imprisonment (210 months) followed by 15 years of supervised release. The defendant requested a sentence of 12 years (144 months) of imprisonment followed by five years of supervised release. The Court imposed a sentence of 14 years of imprisonment (168 months) to be followed by 10 years of supervised release.

Both of these recent cases demonstrate that the agreed upon sentence in Mr. Seestedt's case is appropriate. The defendant in *McLain* was permitted to plead guilty to one count of advertising child pornography, though he also distributed and produced child pornography on several occasions. In fact, he produced child pornography by means of deception involving *many* child victims, some of whom he persuaded to victimize other children. The conduct occurred over a span of years. He received a 15-year sentence and a term of supervised release of less life. Here, Mr. Seestedt accepted responsibility for all of his conduct and pled guilty to two offenses. Mr. Seestedt did not engage in production conduct by means of deception. There is one victim at issue for the production offense in this case. Mr. Seestedt did not exploit children over social media to convince them to engage in producing CSAM. In *Rehman*, the defendant was permitted to plead guilty to an offense carrying a 10-year mandatory minimum, though his conduct easily established the 15-year mandatory minimum for production. That case also involved hands on conduct with a post-pubescent minor. There, the defendant engaged in acts of attempted obstruction after he was initially charged by attempting to convince the victim to make false statements. The defendant received a sentence of 14 years of imprisonment and just 10 years of supervision. In light of these cases, the agreed upon sentence of 15 years (180 months) of imprisonment and a lifetime of supervised release is appropriate in Mr. Seestedt's case.

## CONCLUSION

For these reasons and those to presented at sentencing, the Court should deny the Motion filed by counsel for MV1, accept the Plea Agreement, and impose the agreed upon sentence, which is sufficient but not greater than necessary to serve the purposes of sentencing.

Respectfully submitted,

___________/s/________________

Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE[5]

I HEREBY CERTIFY that on this 3rd day of June, 2026, the foregoing was served on counsel for the Government and counsel for MV1 via ECF.

_____/s/________
Michael E. Lawlor

[5] This Response was due to be filed on June 2, 2026. Counsel apologizes for the delay. Last night, counsel's eldest child graduated from high school. Counsel therefore required some additional time to prepare this Response. Counsel respectfully requests that the Court accept this submission.